IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| GREE, INC., | § | Case No.: |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| SUPERCELL OY, | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

Plaintiff GREE, Inc. ("GREE" or "Plaintiff") files this Complaint against Supercell Oy

("Supercell" or "Defendant").  In this Complaint, GREE asserts U.S. Patent No. 10,518,177

(the "'177 patent") against at least Supercell's "Clash Royale" game.  GREE alleges as follows:

## PARTIES

1.      Plaintiff GREE is a corporation organized under the laws of Japan with a

principal place of business at 6-10-1, Roppongi, Roppongi Hills Mori Tower Minato-Ku,

Tokyo, Japan.

2.      Defendant Supercell Oy is a corporation organized under the laws of Finland,

with a principal place of business at Itämerenkatu 11-13, Helsinki, Uusimaa, 00180, Finland.

## JURISDICTION AND VENUE

3.      This action arises under the patent laws of the United States, Title 35 of the

United States Code.  Accordingly, this Court has jurisdiction over the subject matter of this

action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.      This Court has personal jurisdiction over Supercell because it has, directly or

through agents and/or intermediaries, committed acts within Texas, including within this

District, giving rise to this action and/or has established minimum contacts with Texas and this District such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

5. Supercell regularly conducts business in Texas, including this District, and purposefully avails itself of the privileges of conducting business in Texas.  In particular, Supercell, directly and/or through its agents and/or intermediaries, makes, uses, imports, offers for sale, sells, and/or advertises its products and affiliated services in Texas, including this District.  Defendant has placed, and continues to place, infringing products into the stream of commerce, via an established distribution channel, including iTunes and Google Play stores, with the knowledge and/or understanding that such products are sold to and/or used by users in the United States, including in Texas and specifically including this District.

6. Alternatively, and/or in addition, this Court has jurisdiction over Supercell Oy under Federal Rule of Civil Procedure 4(k)(2).  This action arises from actions of Supercell Oy directed toward the United States, including (1) committing at least a portion of the infringing acts alleged herein and (2) regularly transacting business, soliciting business, and deriving revenue from the sale of goods and services, including infringing goods and services, to individuals in the United States.  Therefore, Supercell Oy has purposefully availed itself of the benefits of the United States, including the Eastern District of Texas, and the exercise of jurisdiction over Supercell would not offend traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(c), as Supercell Oy is not a resident of the United States.

## GREE AND THE ASSERTED PATENT

8.      GREE is a global social media company that provides mobile content and services, including games, entertainment, media, advertising, and investment services.

9.      Originally founded in 2004, GREE has long sought to develop and create innovative solutions in gaming and social networking.  GREE has sought to protect its investments in innovation by obtaining patent protection.  GREE currently hold patents covering various improvements in digital and gaming technology in countries throughout the world, including the United States.

10.      GREE is the owner by assignment of all right, title, and interest in and to the '177 patent entitled "Game control method, system, and non-transitory computer-readable recording medium," which duly and legally issued at 12:00 a.m. Eastern Standard Time on December 31, 2019.

11.      The '177 patent describes and claims different aspects of innovative systems and methods for controlling and presenting games to users on a computer or mobile device. Specifically, the '177 patent describes innovative systems and methods "that allow a wide range of players to enjoy a group battle without regard for difference in level, degree of attack strength, or the like and that, in a group battle limited to a time slot, improve the participation rate throughout the set time slot."  U.S. Pat. App. Pub. 2015/0238862 at ¶ 0011.

12.      The specification of the '177 patent explains that in conventional games, "the participation rate of group members tends to increase in the last half of the time slot," but that a game provider "wants players to participate actively in the battle throughout the entire time set for the group battle and to enjoy the game during the entire set time." *Id.* at ¶¶ 0008-09.  The specification further explains that in conventional games, "a battle may be fought with

opponents having vastly dissimilar attack strengths" and that "beginners may therefore be unsuccessful" and thus "may end up passively participating in a group battle." *Id.* at ¶ 0010.

13.     To resolve these issues, the specification describes an innovative user interface and game play that "divid[es] the battle into a plurality of time slots" and "set[s] a battle condition of at least one of the time slots . . . to differ from a battle condition of a second time slot . . . ." *Id.* at ¶ 0012.  The specification further explains that "[b]y dividing the time slot of the battle game into a plurality of time slots and setting the battle condition for each time slot, a battle game that has conventionally been played under certain rules can be changed . . . ." *Id.* at ¶ 0013.  The example is given of "setting a battle condition that is advantageous for a certain target and by changing the battle condition in the time slot for the first half, for example, when the participation rate in the time slot battle game is not high, an increase in the participation rate of characters throughout the time slots can be expected." *Id.*

14.     In addition, the specification explains that "circumstances that allow beginners to enjoy the battle can be created by setting the battle conditions for example to increase the attack strength of low-level characters, which correspond to beginners, and to favor beginners in the first half in which the participation rate in the battle is not very high." *Id.*

15.     The claims of the '177 patent are rooted in computer technology and cannot be performed without a computer.  The claims are directed to specific improved graphical user interfaces and functionality on computers and mobile devices, and are inextricably tied to computer technology.

16.     A computer-implemented game using the particular visual presentation described and claimed in the '177 patent was not common or conventional in the art of computer-implemented battle games at the time of the invention of the '177 patent.

Conventional card-based battle games did not include two terms with two distinct battle conditions in the manner described and claimed in the '177 patent.  The particular user interface and manner of conducting the game greatly enhanced the visual effect for users.

17.     These improvements over prior art and conventional gaming devices, systems, and methods represent meaningful limitations and/or inventive concepts.  Further, in view of these specific improvements, the inventions of the asserted claims, when such claims are viewed as a whole and in ordered combination, are not routine, well-understood, conventional, generic, existing, commonly used, well-known, previously known, or typical.

## GENERAL ALLEGATIONS

18.     Defendant Supercell makes, uses, sells, offers for sale, and/or imports into the United States gaming systems, software, or methods for controlling games in which users do battle, including Clash Royale.

19.     Clash Royale operates on computers and mobile devices, including those with iOS and Android operating systems.

20.     Defendant Supercell operates, places into service, or otherwise controls a plurality of servers worldwide, including in the United States, on which Supercell operates, and its customers and other users use, software related to Clash Royale and on which Supercell stores user data associated with the products.

21.     Clash Royale has millions of registered users worldwide, including in the United States and Texas.

22.     Supercell has had knowledge of the '177 patent at least since the date of filing of this Complaint.

## COUNT I—INFRINGEMENT OF THE '177 PATENT

23.     GREE re-alleges and incorporates by reference each and every allegation contained in the paragraphs 1-22 as if fully set forth herein.

24.     Supercell directly infringes at least claim 1 of the '177 patent by, without authority, making, using, importing, selling, or offering to sell Clash Royale in the United States, in violation of 35 U.S.C. § 271(a).

25.     For example, claim 1 of the '177 patent recites:

[preamble] A non-transitory computer-readable recording medium storing instructions to be executed by one or a plurality of computers capable of being used by a player conducting a battle game, the instructions causing the one or a plurality of computers to execute steps of:

[a] displaying, on a first field, a plurality of cards selected from a deck which is a stack of virtual cards;

[b] during a first term of the battle game, conducting a battle to a first opponent character based on a parameter set on a card selected by a player's operation under a first battle condition, wherein the first battle condition is not changed during the first term;

[c] at a conclusion of the first term of the battle game, automatically initiating a second term of the battle game, and during the second term of the battle game continued from the first term, conducting the battle to a second opponent character based on the parameter set on the card selected by the player's operation under a second battle condition, wherein the second battle condition is different from the first battle condition and is predetermined independent from a battle result of the first term, and the first opponent character and the second opponent character are same or different, and wherein the second battle condition is not changed during the second term; and

[d] during a third term of the battle game continued from the second term, conducting the battle to a third opponent character based on the parameter set on the card selected by the player's operation under a third battle condition, wherein the third battle condition is different from the second battle condition and is dependent on a battle result of the second term, and the second opponent character and the third opponent character are same or different, and wherein the third battle condition is not changed during the third term.

26.     To the extent the preamble is limiting, Clash Royale includes "[a] non-transitory computer-readable recording medium storing instructions to be executed by one or a plurality

of computers capable of being used by a player conducting a battle game."  The Clash Royale

game allows users to "[d]uel players from around the world in real-time in both 1v1 and 2v2

Battles" using computers or mobile devices running the iOS or Android operating systems.  *See*

https://itunes.apple.com/us/app/clash-royale/id1053012308?mt=8.  An example is shown in the

annotated figure below.



27.     With respect to element 1[a], Clash Royale displays on a first field, a plurality of

cards selected from a deck which is a stack of virtual cards.



28.     With respect to claim element 1[b], during a first term of the battle game, a

battle is conducted to a first opponent character based on a card selected by a player's operation under a first battle condition which is not changed during the first term.  For example, in Clash Royale, a battle is normally three minutes, and the first period of the battle is two minutes. During that two minute period, elixir increases at a predetermined rate.  Also, the battle does not end if the Princess Towers are destroyed; instead the battle ends if the King's Tower is destroyed.  An example is shown in the annotated figures below.



29.     With respect to claim element 1[c], a second term of the battle game is automatically initiated after the first term.  As explained above, a battle typically lasts for three minutes, and at the end of two minutes (the first term), the second term (one minute) is initiated.  During the second term, the battle is conducted to a second opponent character based on the parameter set on the card selected by the player's operation under a second battle condition which is different from the first battle condition and is independent of the battle result of the first term, and the second condition does not change during the second term.  Here, for example, when the second term begins, the player's elixir increases at double the rate of the first term as shown in the figure below.



30.     With respect to claim element 1[d], a third term of the battle game continues in which a third opponent character is battled based on the parameter set on the card selected by the player's operation under a third battle condition that is different from the second battle condition.  For example, as shown below, if the King's Towers of both players have not been destroyed and the same number of Princess Towers of both players have been destroyed, Clash Royale moves into a one-minute sudden-death overtime period, the ending of which is an example of a third battle condition.  Thus, the third term is dependent on a battle result of the second term.  Also, the third battle condition is not changed during the third term.  Just as during the second term, elixir increases at a rate of double the first term. An example of a third battle condition is that if at least one of the Princess Towers remains after the second term, then the battle ends if one Princess Tower or the King's Tower is destroyed.  Still another example of a third battle condition is that if all Princess Towers are destroyed at that end of the second term, the battle ends if the King's Tower is destroyed.



31.  Supercell indirectly infringes the '177 patent within the United States by inducing infringement under 35 U.S.C. § 271(b).  For example, since learning of the '177 patent and by failing to cease offering Clash Royale, Supercell has knowingly and intentionally induced Clash Royale users to directly infringe one or more claims of the '177 patent, *inter alia*, by (1) providing instructions or information, for example on publicly available websites (*see, e.g.*, https://supercell.helpshift.com/a/clash-royale/?p=web&l=en&s=battle and linked pages), to explain how to use the Clash Royale application in an infringing manner, including the use of the Clash Royale application in the manners described in the foregoing paragraphs, which are expressly incorporated herein, and (2) touting infringing uses of Clash Royale in advertisements, including but not limited to those listed on or available from their websites and other mobile application marketplace websites.

32.  Supercell indirectly infringes the '177 patent by contributing to the direct infringement by end users under 35 U.S.C. § 271(c) by providing Clash Royale, which, as evidenced by Supercell's websites and advertisements (*see, e.g.*, https://supercell.helpshift.com/a/clash-royale/?p=web&l=en&s=battle and linked pages), is especially made for use in a manner that infringes one or more claims of the '177 patent as described herein and has no substantial non-infringing uses.

33.     GREE has been and continues to be injured by Supercell's infringement of the '177 patent.  GREE is entitled to recover damages adequate to compensate it for Supercell's infringing activities in an amount to be determined at trial, but in no event less than a reasonable royalty.

34.     Unless enjoined by this Court, Supercell's acts of infringement will continue to damage and cause irreparable harm to GREE.

35.     On information and belief, Supercell's infringement of the '177 patent has been willful and deliberate.  Supercell has known of the '177 patent and its infringement thereof and continued its unlawful actions nevertheless.  On September 12, 2016, GREE sent a letter to Supercell specifically identifying a foreign counterpart to the '177 patent: JP5793592.  At that time, the application that issued as the '177 patent was already pending.  Additionally and/or alternatively, Supercell has had knowledge of the application that issued as the '177 patent since at least June 28, 2017, when Supercell answered a Complaint served by GREE for infringement of JP5793592, the Japanese counterpart of the '177 patent in Civil Department 29 of the Tokyo District Court.  GREE is therefore entitled to increased damages under 35 U.S.C. § 284 and attorneys' fees and costs under 35 U.S.C. § 285.

### PRAYER FOR RELIEF

WHEREFORE, GREE prays for relief in its favor, as follows:

A.     Enter a judgment that Defendant Supercell has infringed, and willfully infringed, the '177 patent.

B.     Grant a permanent injunction restraining and enjoining Defendant Supercell and its officers, directors, agents, servants, employees, successors, assigns, parents, subsidiaries, affiliated or related companies, and attorneys from directly or indirectly infringing the '177

patent;

      C.      Enter a declaration that this case is exceptional and correspondingly award GREE attorney fees and costs under 35 U.S.C. § 285;

      D.      Award damages, enhanced damages, costs, and prejudgment interest to GREE under 35 U.S.C. § 284; and

      E.      Grant such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

GREE hereby demands a jury trial on all issues appropriately triable by a jury.

DATED: December 30, 2019            GILLAM & SMITH, LLP

By  */s/ Steven D. Moore*
            MELISSA R. SMITH
            (Texas State Bar No. 24001351)
            HARRY L. GILLAM, JR.
            (Texas State Bar No. 07921800)
            303 South Washington Avenue
            Marshall, Texas  75670
            Telephone:  (903) 934-8450
            Facsimile:   (903) 934-9257
            Email:  melissa@gillamsmithlaw.com
            Email:  gil@gillamsmithlaw.com

Of Counsel:                                  KILPATRICK TOWNSEND & STOCKTON LLP
                                             STEVEN D. MOORE (CA Bar No. 290875)
                                             TAYLOR J. PFINGST (CA Bar No. 316516)
                                             Two Embarcadero Center, Suite 1900
                                             San Francisco, CA  94111
                                             Telephone:  (415) 576-0200
                                             Facsimile:   (415) 576-0300
                                             Email:  smoore@kilpatricktownsend.com
                                             Email:  tpfingst@kilpatricktownsend.com

                                             NORRIS P. BOOTHE (State Bar No. 307702)
                                             1080 Marsh Road
                                             Menlo Park, CA  94025
                                             Telephone:  (650) 326-2400
                                             Facsimile:   (650) 326-2422
                                             Email:  nboothe@kilpatricktownsend.com

                                             JOHN C. ALEMANNI (NC Bar No. 22977)
                                             TAYLOR HIGGINS LUDLAM (NC Bar No.
                                             42377)
                                             4208 Six Forks Road
                                             Raleigh, NC  27609
                                             Telephone:  (919) 420-1700
                                             Facsimile:   (919) 420-1800
                                             Email:  jalemanni@kilpatricktownsend.com
                                             Email:  tludlam@kilpatricktownsend.com

                                             MICHAEL T. MORLOCK (GA Bar No. 647460)
                                             1100 Peachtree Street, NE
                                             Suite 2800
                                             Atlanta, Georgia 30309
                                             Telephone:  (404) 815-6500
                                             Facsimile:   (404) 815-6555
                                             Email:  mmorlock@kilpatricktownsend.com

                                             ALTON L. ABSHER III (NC Bar No. 36579)
                                             1001 West Fourth Street
                                             Winston-Salem, NC  27101
                                             Telephone:  (336) 607-7300
                                             Facsimile:   (336) 607-7500
                                             Email:  aabsher@kilpatricktownsend.com

                                             Attorneys for PLAINTIFF
                                             GREE, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2019, all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(a)(3):

/s/ Melissa R. Smith