**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

GREE, INC.,

              *Plaintiff*,

         v.

SUPERCELL OY,

            *Defendant*.

Case No. 2:19-cv-00413-JRG-RSP

## <u>CLAIM CONSTRUCTION MEMORANDUM OPINION AND ORDER</u>

Before the Court is the opening claim construction brief of GREE, Inc. ("Plaintiff"), Dkt. No. 65, filed on September 9, 2020,[1] the response of Supercell Oy ("Defendant"), Dkt. No. 67, filed on September 23, 2020, and Plaintiff's reply, Dkt. No. 68, filed on September 30, 2020. The Court held a hearing on the issues of claim construction and claim definiteness on October 27, 2020. Having considered the arguments and evidence presented by the parties at the hearing and in their briefing, the Court issues this Order.

---

[1] Citations to the parties' filings are to the filing's number in the docket (Dkt. No.) and pin cites are to the page numbers assigned through ECF.

**Table of Contents**

I.   BACKGROUND ............................................................................................... 3

II.  LEGAL PRINCIPLES ................................................................................... 4

    A.   Claim Construction .......................................................................... 4

    B.   Departing from the Ordinary Meaning of a Claim Term .......................................... 7

    C.   Functional Claiming and 35 U.S.C. § 112, ¶ 6 (pre-AIA) / § 112(f) (AIA) ........... 8

    D.   Definiteness Under 35 U.S.C. § 112, ¶ 2 (pre-AIA) / § 112(b) (AIA) ................. 10

III. AGREED CONSTRUCTIONS ....................................................................... 11

IV.  CONSTRUCTION OF DISPUTED TERMS ............................................... 12

    A.   "stack of virtual cards" .......................................................................... 12

    B.   The Parameter Terms ......................................................................... 16

    C.   "automatically initiating a second term of the battle game" ................................. 24

    D.   "a third term of the battle game continued from the second term" ....................... 25

    E.   "… dependent on a battle result …" .................................................................. 28

    F.   "the second field" ............................................................................ 30

    G.   "a third term after the second term, in the second field, under a second battle condition which is different from the first battle condition and second battle condition and is dependent on a battle result in the second term, conduct a battle against a third-term opponent character appearing in the third term using a third-term parameter based on a third-term card selected by the player" ...................................................................... 32

    H.   " … rendition processing module … configured to …" ....................................... 36

V.   CONCLUSION ............................................................................................. 40

## I.      BACKGROUND

Plaintiff alleges infringement of two U.S. Patents: No. 10,518,177 (the "'177 Patent") and No. 10,583,362 (the "'362 Patent") (collectively, the "Asserted Patents"). The '362 Patent issued from a continuation of the application for the '177 Patent and both patents list a priority claim to a Japanese patent application filed on February 25, 2014.

In general, the Asserted Patents are directed to technology for providing a computer game to client devices over a network.

The abstracts of the Asserted Patents are identical and provide:

> Players with a wide range of levels or attack strength can enjoy a time-limited group battle, and the participation rate can be expected to improve throughout the set time slot. A battle time managing unit refers to a timer and a memory resource to manage the time of a battle between groups. A battle condition extraction unit refers to the memory resource and checks whether to change a battle condition during the time of the battle. A target changing unit refers to the memory resource to set a target of change based on the battle condition. A battle condition changing unit changes the battle condition for the target of change that was selected by the target changing unit. Based on the changed battle condition, a battle rendering unit executes rendition processing for the game related to the battle.

Claims 15 and 16 of the '177 Patent, exemplary method and system claims respectively, recite as follows, with terms in dispute emphasized:

> **15**. A battle game control method executed by one or a plurality of computers capable of being used by a player, the method comprising:
> displaying, on a first field, a plurality of cards selected from a deck which is a ***stack of virtual cards***;
> during a first term of the battle game, conducting a battle to a first opponent character based on ***a parameter set on a card selected by a player's operation under a first battle condition*** on a second field different from the first field, wherein the first battle condition is not changed during the first term; and
> at a conclusion of the first term of the battle game, ***automatically initiating a second term of the battle game***, and during the second term of the battle game continued from the first term, conducting the battle to a second opponent character based on ***the parameter set on the card selected by the player's operation under a second battle condition***, wherein the second battle condition is different from the first battle condition and is predetermined independent from a battle result of the first term, and the first opponent

3

character and the second opponent character are same or different, and wherein the second battle condition is not changed during the second term.

**16**. A battle game control system comprising:
one or more computers;
a memory storing instructions; and
a processor, by executing the instructions, programmed to:
> display, on a first field, a plurality of cards selected from a deck which is a ***stack of virtual cards***;
> during a first term of the battle game, conducting a battle to a first opponent character based on ***a parameter set on a card selected by a player's operation under a first battle condition***, wherein the first battle condition is not changed during the first term;
> at a conclusion of the first term of the battle game, ***automatically initiating a second term of the battle game***, and during the second term of the battle game continued from the first term, conducting the battle to a second opponent character based on ***the parameter set on the card selected by the player's operation*** under a second battle condition, wherein the second battle condition is different from the first battle condition and is predetermined independent from a battle result of the first term, and the first opponent character and the second opponent character are same or different, and wherein the second battle condition is not changed during the second term; and
> during ***a third term of the battle game continued from the second term***, conducting the battle to a third opponent character based on ***the parameter set on the card selected by the player's operation under a third battle condition***, wherein ***the third battle condition is different from the second battle condition and is dependent on a battle result of the second term***, and the second opponent character and the third opponent character are same or different, and wherein the third battle condition is not changed during the third term.

## II. LEGAL PRINCIPLES

### A. Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To determine the meaning of the claims, courts start by considering the intrinsic evidence. *Id.* at 1313; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d

1258, 1267 (Fed. Cir. 2001). The intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. The general rule—subject to certain specific exceptions discussed *infra*—is that each claim term is construed according to its ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) (quotation marks omitted) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.") *cert. granted, judgment vacated,* 135 S. Ct. 1846 (2015).

"The claim construction inquiry . . . begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). "[I]n all aspects of claim construction, 'the name of the game is the claim.'" *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (quoting *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998)) *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015). First, a term's context in the asserted claim can be instructive. *Phillips*, 415 F.3d at 1314. Other asserted or unasserted claims can also aid in determining the claim's meaning, because claim terms are typically used consistently throughout the patent. *Id*. Differences among the claim terms can also assist in understanding a term's meaning. *Id*. For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive;

it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

The prosecution history is another tool to supply the proper context for claim construction because, like the specification, the prosecution history provides evidence of how the U.S. Patent and Trademark Office ("PTO") and the inventor understood the patent. *Phillips*, 415 F.3d at 1317. However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* at 1318; *see also Athletic Alts., Inc. v. Prince Mfg.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (ambiguous prosecution history may be "unhelpful as an interpretive resource").

Although extrinsic evidence can also be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use

claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id*. at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are not helpful to a court. *Id*. Extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id*. The Supreme Court has explained the role of extrinsic evidence in claim construction:

> In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period. *See, e.g., Seymour v. Osborne*, 11 Wall. 516, 546 (1871) (a patent may be "so interspersed with technical terms and terms of art that the testimony of scientific witnesses is indispensable to a correct understanding of its meaning"). In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence. These are the "evidentiary underpinnings" of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal.

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331–32 (2015).

## B.    Departing from the Ordinary Meaning of a Claim Term

There are "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution."[2] *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)); *see also GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014)

---

[2] Some cases have characterized other principles of claim construction as "exceptions" to the general rule, such as the statutory requirement that a means-plus-function term is construed to cover the corresponding structure disclosed in the specification. *See, e.g., CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1367 (Fed. Cir. 2002).

("[T]he specification and prosecution history only compel departure from the plain meaning in two instances: lexicography and disavowal."). The standards for finding lexicography or disavowal are "exacting." *GE Lighting Sols.*, 750 F.3d at 1309.

To act as his own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term." *Id.* (quoting *Thorner*, 669 F.3d at 1365); *see also Renishaw*, 158 F.3d at 1249. The patentee's lexicography must appear "with reasonable clarity, deliberateness, and precision." *Renishaw*, 158 F.3d at 1249.

To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender. *Cordis Corp. v. Bos. Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009); *see also Thorner*, 669 F.3d at 1366 ("The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."). "Where an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

## C.   Functional Claiming and 35 U.S.C. § 112, ¶ 6 (pre-AIA) / § 112(f) (AIA)

A patent claim may be expressed using functional language. *See* 35 U.S.C. § 112, ¶ 6; *Williamson*, 792 F.3d at 1347–49 & n.3 (en banc in relevant portion).[3] Section 112, Paragraph 6, provides that a structure may be claimed as a "means . . . for performing a specified function" and that an act may be claimed as a "step for performing a specified function." *Masco Corp. v. United States*, 303 F.3d 1316, 1326 (Fed. Cir. 2002).

---

[3] This provision is also known as 35 U.S.C. § 112(f).

But § 112, ¶ 6 does not apply to all functional claim language. There is a rebuttable presumption that § 112, ¶ 6 applies when the claim language includes "means" or "step for" terms, and that it does not apply in the absence of those terms. *Id.*; *Williamson*, 792 F.3d at 1348. The presumption stands or falls according to whether one of ordinary skill in the art would understand the claim with the functional language, in the context of the entire specification, to denote sufficiently definite structure or acts for performing the function. *See Media Rights Techs., Inc. v. Cap. One Fin. Corp.*, 800 F.3d 1366, 1372 (Fed. Cir. 2015) (§ 112, ¶ 6 does not apply when "the claim language, read in light of the specification, recites sufficiently definite structure" (quotation marks omitted) (citing *Williamson*, 792 F.3d at 1349 (§ 112, ¶ 6 does not apply when "the words of the claim are understood by persons of ordinary skill in the art to have sufficiently definite meaning as the name for structure"); *Robert Bosch, LLC v. Snap-On Inc.*, 769 F.3d 1094, 1099 (Fed. Cir. 2014))); *Masco Corp.*, 303 F.3d at 1326 (§ 112, ¶ 6 does not apply when the claim includes an "act" corresponding to "how the function is performed"); *Personalized Media Commc'ns, L.L.C. v. Int'l Trade Comm'n*, 161 F.3d 696, 704 (Fed. Cir. 1998) (§ 112, ¶ 6 does not apply when the claim includes "sufficient structure, material, or acts within the claim itself to perform entirely the recited function . . . even if the claim uses the term 'means.'" (quotation marks and citation omitted)).

When it applies, § 112, ¶ 6 limits the scope of the functional term "to only the structure, materials, or acts described in the specification as corresponding to the claimed function and equivalents thereof." *Williamson*, 792 F.3d at 1347–48 (citation omitted). Construing a means-plus-function limitation involves multiple steps. "The first step … is a determination of the function of the means-plus-function limitation." *Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001) (citation omitted). "[T]he next step is to determine the

corresponding structure disclosed in the specification and equivalents thereof." *Id*. A "[s]tructure disclosed in the specification is 'corresponding' structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim." *Id*. (citation omitted). The focus of the "corresponding structure" inquiry is not merely whether a structure is capable of performing the recited function, but rather whether the corresponding structure is "clearly linked or associated with the [recited] function . . . ." *Id*. The corresponding structure "must include all structure that actually performs the recited function." *Default Proof Credit Card Sys. v. Home Depot U.S.A., Inc. (d/b/a The Home Depot)*, 412 F.3d 1291, 1298 (Fed. Cir. 2005) (citation omitted). However, § 112 does not permit "incorporation of structure from the written description beyond that necessary to perform the claimed function." *Micro Chem., Inc. v. Great Plains Chem. Co., Inc.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999) (citation omitted).

For § 112, ¶ 6 limitations implemented by a programmed general-purpose computer or microprocessor, the corresponding structure described in the patent specification must include an algorithm for performing the function. *WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1349 (Fed. Cir. 1999). The corresponding structure is not a general-purpose computer but rather the special purpose computer programmed to perform the disclosed algorithm. *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008).

### D.   Definiteness Under 35 U.S.C. § 112, ¶ 2 (pre-AIA) / § 112(b) (AIA)

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2. A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). If it does not, the claim fails § 112, ¶ 2 and is therefore invalid as indefinite. *Id.* at 901. Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application for the patent was

10

filed. *Id.* at 911. As it is a challenge to the validity of a patent, the failure of any claim in suit to comply with § 112 must be shown by clear and convincing evidence. *BASF Corp. v. Johnson Matthey Inc.,* 875 F.3d 1360, 1365 (Fed. Cir. 2017). "[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012).

When a term of degree is used in a claim, "the court must determine whether the patent provides some standard for measuring that degree." *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1378 (Fed. Cir. 2015) (quotation marks omitted). Likewise, when a subjective term is used in a claim, "the court must determine whether the patent's specification supplies some standard for measuring the scope of the [term]." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1351 (Fed. Cir. 2005). The standard "must provide objective boundaries for those of skill in the art." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014).

In the context of a claim governed by 35 U.S.C. § 112, ¶ 6, the claim is invalid as indefinite if the claim fails to disclose adequate corresponding structure to perform the claimed function. *Williamson*, 792 F.3d at 1351–52. The disclosure is inadequate when one of ordinary skill in the art "would be unable to recognize the structure in the specification and associate it with the corresponding function in the claim." *Id*. at 1352.

## III.   AGREED CONSTRUCTIONS

The parties have agreed to constructions set forth in their Joint Claim Construction Chart. Dkt. No. 69. Based on the agreement, the Court hereby adopts the agreed constructions for this case.

## IV.    CONSTRUCTION OF DISPUTED TERMS

### A.    "stack of virtual cards"

| Disputed Term[4] | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "stack of virtual cards"<br><br>• '177 Patent Claims 1, 8, 14, 15, 16, 17<br>• '362 Patent Claims 1, 12, 20, 27 | set of images of cards that can each be displayed on a screen | a plurality of digital cards displayed in a pile such that the face of only one card is shown |

**<u>The Parties' Positions</u>**

Plaintiff submits: As is well known, a card deck, which is an exemplary stack of cards, may be displayed in a variety of ways other than Defendant's proposed "in a pile such that the face of only one card is shown." Further, "[t]he term 'digital' in [Defendant's proposed] 'digital cards' is superfluous, and 'digital cards' are undefined in the specification or claims." Dkt. No. 65 at 16–18.

In addition to the claims themselves, Plaintiff cites the following **intrinsic evidence** to support its position: '177 Patent fig.4, col.7 ll.6–8.

Defendant responds: As described in the Asserted Patents and consistent with the plain meaning of "virtual," "virtual" cards are cards that are simulated by a computer, they are digital. A "stack" of cards, as described in the patents and consistent with the plain meaning of "stack," is a pile of cards with only the top card visible. This stack of "cards" plainly requires more than one card. Dkt. No. 67 at 9–13.

In addition to the claims themselves, Defendant cites the following intrinsic and extrinsic evidence to support its position: **Intrinsic evidence**: '177 Patent fig.4, col.6 ll.36–38, col.6 ll.60–

---

The term charts in this order list claims identified in the parties' Joint Claim Construction Chart Pursuant to P.R. 4-5(d) (Dkt. No. 69).

61, col.7 ll.6–8. **Extrinsic evidence**: *Merriam-Webster.com Dictionary* "virtual,"[5] (Defendant's Ex. A, Dkt. No. 67-2); *Merriam-Webster.com Dictionary* "stack,"[6] (Defendant's Ex. B, Dkt. No. 67-3).

Plaintiff replies: The concept of a "virtual card" is better expressed as an image of a card than as a digital card because the meaning of "digital card" is not clear and the use of "digital card" in a construction does not clarify claim scope. A "stack" plainly may include only one card, as when one starts with a deck of multiple cards and removes cards until only one is remaining. Dkt. No. 68 at 4–5.

Plaintiff cites further **extrinsic evidence** to support its position: Petition for Post-Grant Review of U.S. Patent No. 10,518,177 at 48–49, *Supercell Oy v. GREE, Inc.*, PGR2020-00088, (P.T.A.B. Sept. 29, 2020), paper 2 (Plaintiff's Reply Ex. A, Dkt. No. 68-2 at 61–62).

<u>**Analysis**</u>

The dispute distills to four issues. First, whether the stack of virtual cards necessarily requires more than one card. It does. Second, whether a stack of cards refers to cards in a pile. It plainly refers to a geometric configuration, but that configuration is best expressed as a "stack." Third, whether a stack of cards necessarily has to show the face of only one card. It does not. Fourth, whether a "virtual card" is best expressed as an image of a card or a digital card. It is best expressed as a computer-simulated card.

The stack of virtual cards plainly has a plurality of cards. To begin, that the term "cards" is expressed in the plural indicates that the there is more than one card. *See Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*, 285 F.3d 1353, 1357 (Fed. Cir. 2002) ("At the outset, the claim recites

---

[5] https://www.merriam-webster.com/dictionary/virtual
[6] https://www.merriam-webster.com/dictionary/stack

'support wires' in the plural, thus requiring more than one welded 'support wire.'"). The context of the surrounding claim language further dictates that the stack of cards has more than one card. For example, Claim 1 of the '177 Patent recites "a plurality of cards selected from a deck which is a stack of virtual cards." '177 Patent col.13 ll.3–4. That a "plurality" of cards is selected from the deck which is a stack of cards means that the stack has at least a plurality of cards.

A stack of cards is not simply a set of cards, it refers to a particular geometric configuration— a kind of pile. Construing "stack" as "set," as Plaintiff suggests, would improperly render other claim language superfluous. Specifically, the claims recite "a deck which is a stack." *See, e.g., id*. at col.13 l.4. That both "deck" and "stack" are used in the claim suggests that the terms have different meanings. The Court understands a "deck" of cards to be a set of cards. Thus, if "stack" is simply a set of cards, then either "deck" or "stack" are entirely redundant in the claim. Further, the plain meaning of "stack" suggests a particular geometric configuration. *See e.g.*, *Merriam-Webster.com Dictionary* (defining "stack" variously as "a large usually conical pile (as of hay, straw, or grain in the sheaf) left standing in the field for storage," "an orderly pile or heap," and "a pile of poker chips"), Dkt. No. 67-3 at 2. Plus, the "stack" described in the Asserted Patents ("deck 600, which is a stack of virtual cards") and depicted as a single card profile in Figure 4 is consistent with this plain meaning. '177 Patent fig.4, col.7 ll.6–7. Ultimately, the geometric nature of a "stack" is plain without construction.

However, the stack of cards is not limited to a particular configuration where the face of only one card is shown. While the stack depicted in Figure 4 of the patents shows the profile of only a single card, this depiction is not limiting. The plain meaning of "stack" suggests that the arrangement of cards is not limited to this particular configuration. Further, there is nothing in the

plain meaning or the patents that suggests that the face of any card must be shown or that the face of more than one card may not be shown when the cards are ordered in a stack.

Finally, in the context of the patents, a "virtual card" is simply a computer-simulated card. The patents are directed to computer-implemented games. *See, e.g.*, '177 Patent col.1 ll.14–17 ("Exemplary embodiments of the present disclosure relate to a game control method, a system, and a non-transitory computer-readable recording medium for providing client devices with a battle game over a network."); col.3 ll.52–55 ("The game system 100 includes a server device 10 that provides a battle game service to a plurality of client devices 30 over a network 20."). The patents use "virtual" to describe objects that are simulated in the game, rather than simply to denote an image or digital representation of such objects. Specifically, the patents provide:

> On the personalized screen, a menu screen related to the group to which an individual player belongs is displayed. A "group" can be a **virtual** collection whose members are characters each controlled by a player via the client device 30. Such groups may be created and established for each game title or may be common to a plurality of game titles. In the field of social games, a group established for such a purpose is also referred to as a "guild", "party", "team", "community', or the like. A character can refer to a **virtual** object that obeys a player's instructions and acts in a **virtual** space on the player's behalf.

'177 Patent col.6 ll.27–38 (emphasis added). This passage suggests that "computer simulated" is a better expression of "virtual" than either Plaintiff's proposed "image" or Defendant's proposed "digital."

Accordingly, the Court construes "stack of virtual cards" as follows:

- "stack of virtual cards" means "two or more computer-simulated cards depicted in a stack."

**B.    The Parameter Terms**

| Disputed Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "the card"<br><br>• '177 Patent Claims 1, 8, 14, 15, 16, 17 | plain and ordinary meaning, no construction necessary | indefinite, or in the alternative:<br><br>• the same card used to conduct battle during the first term |
| "the parameter set"<br><br>• '177 Patent Claims 1, 8, 14, 15, 16, 17 | plain and ordinary meaning, no construction necessary | indefinite, or in the alternative:<br><br>• the same parameter set on the card during the first term |
| "the parameter"<br><br>• '177 Patent Claims 5, 12 | the parameter set | indefinite, or in the alternative:<br><br>• the same parameter set on the card during the first term |
| "a parameter set on a card selected by a player's operation under a first battle condition"<br><br>• '177 Patent Claims 1, 8, 14, 15, 16, 17 | a set of one or more parameters on a card selected by a player's operation under a first battle condition | a group of related parameters that is displayed on the card that is impacted by the first battle condition |
| "the parameter set on the card selected by the player's operation under a second battle condition"<br><br>• '177 Patent Claims 1, 8, 14, 15, 16, 17 | the set of one or more parameters on the card selected by the player's operation under a second battle condition | the group of related parameters that is displayed on the card that is impacted by the second battle condition |
| "the parameter set on the card selected by the player's operation under a third battle condition"<br><br>• '177 Patent Claims 1, 14, 16 | the set of one or more parameters on the card selected by the player's operation under a third battle condition | the group of related parameters that is displayed on the card that is impacted by the third battle condition |

Because the parties' arguments and proposed constructions with respect to these terms are related, the Court addresses the terms together.

**<u>The Parties' Positions</u>**

Plaintiff submits: In each of the independent claims with "the card" or "the parameter set," the claim recites an antecedent basis, so these terms are not indefinite for lack of antecedent basis and Defendant has no other basis for indefiniteness. When the terms "card" and "parameter set" are construed in the context of the surrounding claim language, "parameter set on the card" plainly refers to a set of parameters that are shown on the card rather than a parameter that is set on the card. The description of the invention and prosecution history support this understanding. The recitation of "the parameter" in Claims 5 and 12 of the '177 Patent clearly refers to the "parameter set" since "the parameter" expressly includes two parameters. Dkt. No. 65 at 18–20.

Defendant's proposed constructions, according to Plaintiff, improperly limit the parameter set by including "group of related parameters," "displayed on the card," and "impacted by the . . . battle condition" limitations. As described in the Asserted Patents, a "set" may be one or more parameters, it is not necessarily a "group" of multiple parameters. The parameters are related in that they are part of the set, so Defendant's "related" language threatens to obfuscate rather than clarify claim scope by requiring some other relationship. As described in the patents, the parameters may be but are not necessarily displayed. Finally, the claims recite that a battle is conducted "based on" a parameter set under a battle condition. But there is no support for the battle condition necessarily impacting the cards. Dkt. No. 65 at 20–22.

In addition to the claims themselves, Plaintiff cites the following **intrinsic evidence** to support its position: '177 Patent col.5 ll.13–22, col.7 ll.8–15, col.9 ll.7–38, col.13 ll.5–7; '177 Patent File Wrapper June 19, 2018 Amendment and Response at 10 (Plaintiff's Ex. C, Dkt. No. 65-4 at 11).

Defendant responds: These terms render claims indefinite as it is not reasonably clear: (1) whether the card or the parameter set is selected, (2) whether the selection or the battle is under the battle condition, (3) whether "the card" selected under a second or third battle condition is the card selected under the first battle condition, (4) whether "set" in "parameter set on a card" is a verb or a noun, and (5) whether "the parameter" in Claims 5 and 12 of the '177 Patent refers back to "a parameter" (with "set" a verb) or "a parameter set" (with "set" a noun).

If the Court determines that "parameter set" is not indefinite and that "set" is a "noun," then "set" plainly refers to "'a group of related characters, such as a character set.'" Thus, a "parameter set" necessarily requires more than one parameter. Indeed, the Asserted Patents describe only parameters in the plural and only parameters that are related to a character or item. Further, a parameter set "on a card" refers to parameters displayed on the card, as described in the patents. Finally, the parameter set "under" a battle condition refers to the battle condition's impact on the parameter set: "that the 'parameter set' is itself modified," as described in the patents. Dkt. No. 67 at 13–22.

In addition to the claims themselves, Defendant cites the following intrinsic and extrinsic evidence to support its position: **Intrinsic evidence**: '177 Patent col.5 ll.14–18, col.7 ll.4–20, col.8 ll.3–6; '177 Patent File Wrapper February 22, 2018 Office Action at 3 (Defendant's Ex. C, Dkt. No. 67-4 at 5). **Extrinsic evidence**: *Microsoft Computer Dictionary* at 476 (5th ed. 2002), "set" (Defendant's Ex. E, Dkt. No. 67-6 at 4).

Plaintiff replies: In the context of the Asserted Patents, it is the card that is selected under the first battle condition and the parameter set on the selected card is "used in later parts of the claim to conduct a battle under a second or third battle condition." The "parameter set" may be one parameter, or it may be more than one parameter, as per the ordinary meaning of "set." And nothing

in the intrinsic record warrants the "group," "related," "display," or "impacted" limitations Defendant suggests. Dkt. No. 68 at 6–9.

Plaintiff cites further intrinsic and extrinsic evidence to support its position: **Intrinsic evidence**: '177 Patent col.7 ll.6–9. **Extrinsic evidence**: Petition for Post-Grant Review of U.S. Patent No. 10,518,177 at 51, *Supercell Oy v. GREE, Inc.*, PGR2020-00088, (P.T.A.B. Sept. 29, 2020), paper 2 (Plaintiff's Reply Ex. A, Dkt. No. 68-2 at 64); *Microsoft Computer Dictionary* at 476 (5th ed. 2002), "set" (Defendant's Ex. E, Dkt. No. 67-6 at 4).

<u>Analysis</u>

There are nine issues in dispute. First, whether "selected" recited in the claims at issue refers to the card or the parameter set. It refers to the card. Second, whether the selection or the battle is under the battle condition. The battle is under the battle condition. Third, whether "the card" in the claims refers to "a card" that is selected for the battle under the first battle condition. It does. Fourth, whether "set" is a verb or a noun. It is a noun. Fifth, whether a "parameter set" requires more than one member. It does. Sixth, whether the parameters of the set are necessarily related. They are in that they are members of the set, but the Court declines to read in Defendant's proposed "related" limitation as it is either superfluous or improperly limiting. Seventh, whether a parameter set "on" a card is necessarily displayed. It is not. Eighth, whether "the parameter" in Claims 5 and 12 of the '177 Patent refers to the previously recited "parameter set." It does. Ninth, whether the parameters are necessarily impacted by the battle condition. They are not.

The selection is of the card, the battle—not the selection—is under the battle condition, and "the card" refers to the card selected in the first battle term. The claims provide significant context informing the meanings of these terms. For example, Claims 1 and 5 of the '177 Patent recite as follows:

**1.** A non-transitory computer-readable recording medium storing instructions to be executed by one or a plurality of computers capable of being used by a player conducting a battle game, the instructions causing the one or a plurality of computers to execute steps of:

displaying, on a first field, a ***plurality of cards <u>selected</u> from a deck*** which is a stack of virtual cards;

during a ***<u>first term</u>*** of the battle game, ***conducting a battle to a first opponent character based on a parameter set on <u>a card selected by a player's operation</u> under a first battle condition***, wherein the first battle condition is not changed during the first term;

at a conclusion of the first term of the battle game, automatically initiating a ***<u>second term</u>*** of the battle game, and during the second term of the battle game continued from the first term, ***conducting the battle to a second opponent character based on the parameter set on <u>the card selected by the player's operation</u> under a second battle condition***, wherein the second battle condition is different from the first battle condition and is predetermined independent from a battle result of the first term, and the first opponent character and the second opponent character are same or different, and wherein the second battle condition is not changed during the second term; and

during ***<u>a third term</u>*** of the battle game continued from the second term, ***conducting the battle to a third opponent character based on the parameter set on <u>the card selected by the player's operation</u> under a third battle condition***, wherein the third battle condition is different from the second battle condition and is dependent on a battle result of the second term, and the second opponent character and the third opponent character are same or different, and wherein the third battle condition is not changed during the third term.

5. The non-transitory computer-readable recording medium according to claim 1, wherein ***<u>the parameter</u> includes an attack strength and a life force***.

'177 Patent col.12 l.65 – col.13 l.32, col.13 ll.46–48 (emphasis added). Claim 1 recites three terms of the battle game, the first term involves conducting the battle against a first opponent, the second term involves conducting the battle against a second opponent, the third term involves conducting the battle against a third opponent. In the first term, the battle is "based on ***a*** parameter set on ***a*** card selected by ***a*** player's operation." In the second term, the battle is "based on ***the*** parameter set on ***the*** card selected by ***the*** player's operation." And in the third term, the battle is "based on ***the*** parameter set on ***the*** card selected by ***the*** player's operation." The use of "a" in the phrase of the first term and "the" in the phrases of subsequent terms indicates that there is not a separate

selection (or card or parameter set) in each term. Thus, it is the battle, rather than the selection by the player's operation, that is "under" the first, second, or third battle condition. Claim 1 further recites that cards are "selected" from the deck, which indicates that it is the card rather than the parameter set that is selected.

The "parameter set" refers to a set of parameters that are related in that they are members of the set used in the battle. The term "parameter set" does not appear outside of the claims but the Asserted Patents provide guidance regarding a set of parameters. For example, the patents provide:

> The memory resource (memory unit) 13 stores parameters 70 for each character. ***Examples of the parameters*** 70 include a variable related to the ***attack strength*** of the character (specifically, a variable that conforms to changes in the character's "attack points" or the like), "***skill types***" listed on cards (described in detail below) used when attacking a character in the opponent group during a battle between groups, or particular ***"items" related to skills***, and ***"attributes" of items or cards***, yet the parameters 70 are not limited to these examples.

'177 Patent col.5 ll.13–22 (emphasis added). They further provide:

> The palette **202** is a virtual location for selecting the "***skill***" that can be used when each character attacks an opponent character. A deck **600,** which is a stack of virtual cards, and a plurality of cards **601, 602,** and **603** selected from the deck **600** are displayed on the palette **202.** A display (an illustration or letter) indicating the type of ***skill*** and a particular **item related to the skill** are depicted on each card. ***Attack points*** (such as points for the skill or the invoked attack), ***defense points*** (stamina, life force, or the like), and ***attribute*** (fire, water, tree, earth, or the like) are set for each card.
>
> Each player flips over the cards 601, 602, and 603 from the deck 600 and ***attacks the opponent character in accordance with the combination of the <u>skills, attack points, specific items, defense points, and the like</u> displayed on the cards 601, 602, and 603***. The damage inflicted on the opponent character and the damage the player sustains are then calculated.

*Id*. at col.7 ll.4–21 (emphasis added). The patents also provide:

> When the battle condition is, for example, to increase the attack points by 30% for characters or items such as cards classified under a predetermined attribute, such as fire, water, wind, tree, earth, or the like, the target changing unit 63 sets the characters or items with the attribute as the target of change from among the characters belonging to the group and from among a data table that lists the ***attributes of cards*** included in characters' decks, setting these characters or items.

> The battle condition changing unit 64 changes the battle condition for the target of change that was selected by the target changing unit 63. Specifically, the battle condition changing unit 64 changes the parameters 70 (see FIG. 2) of the character or item that is the target of change. The **parameters** referred to here include an index of a character's **strength** in the battle, such as the **attack points** or **defense points**. For example, when the battle condition is to increase attack points of 10,000 points by 30%, the increased attack points become 13,000 points.

*Id*. at col.8 ll.24–42 (emphasis added). The patents further provide:

> The computer program 40 may, for example, be written in an object-oriented language. In an object-oriented language, battle game processing is made possible by treating each character 301 to 303 as an object, defining the **parameters 70 as "attributes" of the characters** 301 to 303, and defining the behaviors of the characters 301 to 303 (such as attacking) as "methods" of the characters 301 to 303. Image display can be controlled by treating not only the characters 301 to 303 but also the gauges 501 and 502, the **cards 601, 602, and 603**, and the like displayed on the game screen 200 as objects and **defining their "attributes" and "methods"**.

*Id*. at col.12 ll.37–47. These passages indicate that a variety of parameters may be associated with a card. What these parameters have in common, that is, how they are related, is that they are a collection of attributes that are related in that they are used in the battle. But, as stated above, this relationship is expressed in the claims. Further, based on the record, the Court agrees with Defendant that "set" requires at least two members.

The "parameter set" is not necessarily displayed. While the claims plainly recite a "parameter set on a card," this does not mean that the parameter set is necessarily displayed. Indeed, not every card need be displayed, and the description and the claims indicate multiple cards, each with a set of parameters. While the parameter set is somehow indicated on the card, it can be shown in a variety of ways, such as with "an illustration or letter." *See id*. at col.7 ll.4–19.

"The parameter" in Claims 5 and 12 of the '177 Patent refers to "the parameter set" recited in Claims 1 and 8, respectively. Each of these claims recite "the parameter includes an attack strength and a life force." There are two obvious errors in this phrase. First, "the parameter" is recited without prior recitation of just "parameter." Second, "parameter" is recited in the singular yet the

22

claims recite that it includes two parameters. In context, these two errors strongly suggest that "the parameter" is a typographic error and should recite "the parameter set."

Finally, the parameters are not necessarily "impacted" by the battle condition, as Defendant suggests. Defendant has not identified anything that rises to the exacting standard for lexicography or disclaimer such that Defendant's "impacted" limitation should be read into the claims. Indeed, while battle conditions can impact the parameters, the Asserted Patents broadly describe battle conditions such that they do not necessarily impact the parameters. *See, e.g.*, '177 Patent col.8 ll.1– 13 ("Battle conditions also can include any sort of condition applied during a battle, such as providing a reward to the player controlling a character or tallying the battle result during the first portion of a subdivided time slot and reflecting the battle result in a subsequent portion of the subdivided time slot."); *see also, id*. at fig.8 (showing that the battle may proceed without changing a condition of any target of change at decision S104).

Accordingly, the Court holds that Defendant has failed to prove any claim is indefinite for including any of the Parameter Terms, determines that "the card" has its plain and ordinary meaning, and construes the other terms as follows:

- "the parameter set" means "the collection of parameters";

- "the parameter" means "the parameter set";

- "a parameter set on a card selected by a player's operation under a first battle condition" means "a collection of parameters shown on a card selected by a player's operation, under a first battle condition";

- "the parameter set on the card selected by the player's operation under a second battle condition" means "the collection of parameters shown on the card selected by the player's operation, under a second battle condition"; and

- "the parameter set on the card selected by the player's operation under a third battle condition" means "the collection of parameters shown on the card selected by the player's operation, under a third battle condition."

C.   **"automatically initiating a second term of the battle game"**

| Disputed Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "automatically initiating a second term of the battle game"<br><br>• '177 Patent Claims 1, 8, 14, 15, 16, 17 | automatically starting a second period of the battle game | automatically starting a second period of the battle, where independent results of the battle will be tallied and a condition is applied |

**The Parties' Positions**

Plaintiff submits: There is no basis for Defendant's proposed "where independent results of the battle will be tallied and a condition is applied" limitation. Dkt. No. 65 at 22–23.

Defendant responds: As described in the Asserted Patents, the battle results in a particular battle term are tallied to establish the battle condition for the next battle term. Dkt. No. 67 at 22–23.

In addition to the claims themselves, Defendant cites the following **intrinsic evidence** to support its position: '177 Patent col.2 ll.65–67, col.3 l.3, col.3 ll.19–20, col.8 ll.10–13, col.8 ll.64–67.

Plaintiff replies: The described embodiment in which the battle results are tallied to set a battle condition is expressly exemplary, not limiting. In fact, Defendant did not apply its proposed "tallied" limitation when seeking Post Grant Review of the '177 Patent. Dkt. No. 68 at 9–10.

Plaintiff cites further intrinsic and extrinsic evidence to support its position: **Intrinsic evidence**: '177 Patent col.10 ll.1–3. **Extrinsic evidence**: Petition for Post-Grant Review of U.S.

Patent No. 10,518,177 at 53, *Supercell Oy v. GREE, Inc.*, PGR2020-00088, (P.T.A.B. Sept. 29, 2020), paper 2 (Plaintiff's Reply Ex. A, Dkt. No. 68-2 at 66).

**Analysis**

The issue in dispute distills to whether a "where independent results of the battle will be tallied and a condition is applied" limitation should be imported from the embodiments into the claims. It should not.

Defendant seeks to import limitations from the described embodiments. Yet nothing that Defendant identifies rises to the exacting standard for lexicography or disclaimer such that the "tallied" limitation should be incorporated into the claims. *See GE Lighting Sols.*, 750 F.3d at 1309. Indeed, the patents express that the described embodiments are exemplary. *See, e.g.*, '177 Patent col.3 ll.48–50 ("The following describes an exemplary embodiment of the present disclosure (the present embodiment) with reference to the drawings."); *see also, id.* at fig.8 (showing that at tally may not be necessary at decision S107).

Accordingly, the Court construes "automatically initiating a second term of the battle game" as follows:

- "automatically initiating a second term of the battle game" means "automatically starting a second term of the battle game."

**D.    "a third term of the battle game continued from the second term"**

| Disputed Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "a third term of the battle game continued from the second term" <br><br> • '177 Patent Claims 1, 14, 16 | a third term of the battle game directly following the second term | a third term that does not start after a specific amount of time |

**The Parties' Positions**

Plaintiff submits: In the context of the description of the invention, the third term is continued from the second term in that the third term directly follows the second term. Defendant's proposed construction improperly omits references to the battle game and the second term, and it would improperly exclude a disclosed embodiment in which each term of the battle has a specified time interval. Dkt. No. 65 at 23–24.

In addition to the claims themselves, Plaintiff cites the following **intrinsic evidence** to support its position: '177 Patent fig.6, col.7 ll.38–60.

Defendant responds: Neither the claims nor the description of the invention supports a timing requirement for the start of the third battle term, other than that the third term occurs after the second. In fact, the claims were amended during prosecution to state that the second term is automatically initiated at the conclusion of the first term, but the applicant chose not to specify such a transition from the second to the third terms. Thus, "continued" here should not be construed to require an automatic transition from the second term. Dkt. No. 67 at 23–25.

In addition to the claims themselves, Defendant cites the following **intrinsic evidence** to support its position: '177 Patent col.2 ll.63–64; '177 Patent File Wrapper September 10, 2019 Amendment and Response at 11–12, 15 (Defendant's Ex. F, Dkt. No. 67-7 at 12–13, 16).

Plaintiff replies: The Asserted Patents do not specify a timing requirement for the third term, which means the third term may or may not start after a specific amount of time. Dkt. No. 68 at 10.

**Analysis**

There are two issues in dispute. First, whether the "third term" necessarily starts after a specific amount of time. The start of the third term is not limited in this way. Second, whether the

"third term" directly follows the second term. It does not necessarily automatically follow the second term, as Defendant appears to interpret "directly follows." But it directly follows the second term in that there is no intervening battle term.

Defendant's argument is not persuasive. It appears to infer a negative limitation based on the addition of a positive limitation elsewhere in the claims during prosecution of the patents. But just because the claims were amended during prosecution to require that the "second term of the battle game is automatically initiated at a conclusion of the first term of the battle game" does not mandate that a "third term" necessarily is not automatically initiated at the conclusion of the second term. This is in spite of that claim reciting that the third term is "continued" from the second term. Indeed, the Court understands that a term may be "continued" from a previous term in a variety of ways, including automatic initiation at the conclusion of the previous term.

The term "continued" in the claim reflects more than a mere temporal relationship, which both parties' proposed constructions threaten to eliminate. Specifically, the plain meaning of "continued" suggests a connection of some sort rather than some strict temporal relationship. For instance, while a third term that is continued from a second term necessarily follows the second term, a third term that merely follows a second is not necessarily continued from the second. That "continued" requires more than a temporal relationship is plainly understood without further construction.

Accordingly, the Court construes "a third term of the battle game continued from the second term" as follows:

- "a third term of the battle game continued from the second term" means "a third term of the battle game following and continued from the second term."

E.     "… dependent on a battle result …"

| Disputed Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "the third battle condition is different from the second battle condition and is dependent on a battle result of the second term"<br><br>• '177 Patent Claims 1, 14, 16 | plain and ordinary meaning, no construction necessary | the third battle condition is different from the second battle condition and varies depending on a tally of one or more activities occurring during the second term |
| "a third battle condition which is different from the first battle condition and second battle condition and is dependent on a battle result in the second term"<br><br>• '362 Patent Claims 3, 27 | plain and ordinary meaning, no construction necessary | the third battle condition is different from the first battle condition and the second battle condition and varies depending on a tally of one or more activities occurring during the second term |

Because the parties' arguments and proposed constructions with respect to these terms are related, the Court addresses the terms together.

**The Parties' Positions**

Plaintiff submits: The issue in dispute is the meaning of the phrase "dependent on a battle result [of/in] the second term." In the context of the claims, the meaning of this phrase is plain without construction. Defendant's proposal improperly limits the phrase to require a "tally of one or more activities occurring in the second term," which is not supported by the intrinsic record. Dkt. No. 65 at 24–26.

Defendant responds: "Each and every instance of the term 'battle result' in the specification, exclusive of the claims, occurs in the context of 'tallying' the battle result or tallying various activities that occur during the battle leading to the result." "[I]n the sole flowchart detailing the battle rendition processing (FIG. 8), the process is described as 'the present embodiment.'" "Thus, the battle result the third battle condition is dependent on is consistently a tally of these activities." Dkt. No. 67 at 25–26.

In addition to the claims themselves, Defendant cites the following **intrinsic evidence** to support its position: '177 Patent col.7 l.37, col.8 ll.10–13, col.8 ll.53–67, col.9 ll.12–16, col.9 l.63 – col.10 l.29, col.11 ll.8–19, col.12 ll.20–32.

Plaintiff replies: The described embodiment in which the battle results are tallied to set a battle condition is expressly exemplary, not limiting. Dkt. No. 68 at 10–11.

Plaintiff cites further **intrinsic evidence** to support its position: '177 Patent col.10 ll.2–3.

**<u>Analysis</u>**

The issue in dispute is whether the dependence of the second/third battle condition is limited to the condition varying depending on a tally of activities during the second term. It is not.

Defendant seeks to import limitations from the described embodiments. Yet nothing that Defendant identifies rises to the exacting standard for lexicography or disclaimer such that the "tallied" limitation should be incorporated into the claims. Indeed, the patents express that the described embodiments are exemplary. *See, e.g.*, '177 Patent col.3 ll.48–50 ("The following describes an exemplary embodiment of the present disclosure (the present embodiment) with reference to the drawings."); *see also id.* at fig.8 (showing that a battle condition may be changed at decision S102 even though it is not necessary to tally a result at decision S107), col.10 ll.1–3 ("a predetermined battle condition ***may*** be set based on the tallied result" (emphasis added)). That the patents describe embodiments in which a battle condition of a battle term depends on the tally of activities in a previous battle terms does not preclude additional or other dependencies.

Accordingly, the Court rejects Defendant's proposed construction and determines that these terms have their plain and ordinary meaning without the need for further construction.

F.      "the second field"

| Disputed Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "the second field"<br><br>• '177 Patent Claim 7 | a second field | indefinite |

**The Parties' Positions**

Plaintiff submits: The reference to "the" in the "the second field" of Claim 7 of the '177 Patent is a typographic error. The term should be "a second field." Dkt. No. 65 at 26–27.

Defendant responds: The correct meaning of "the second field" is not reasonably clear and therefore it would be improper to rewrite the term as "a second field." Even if the term had antecedent basis, "it is unclear . . . what 'the second field' is or where 'the second field' would be located." Dkt. No. 67 at 26–27.

In addition to the claims themselves, Defendant cites the following **intrinsic evidence** to support its position: '177 Patent fig.4, col.6 ll.58–62, col.7 ll.4–6.

Plaintiff replies: That "the second field" should be corrected to "a second field" is obvious from the surrounding claims. In fact, Defendant interpreted it this way in seeking Post Grant Review of the '177 Patent. While "second field" may be broad, breadth is not indefiniteness. Dkt. No. 68 at 11.

Plaintiff cites further **extrinsic evidence** to support its position: Petition for Post-Grant Review of U.S. Patent No. 10,518,177 at 64, *Supercell Oy v. GREE, Inc.*, PGR2020-00088, (P.T.A.B. Sept. 29, 2020), paper 2 (Plaintiff's Reply Ex. A, Dkt. No. 68-2 at 77).

**Analysis**

The issue in dispute is whether it is reasonably certain that "the second field" in Claim 7 of the '177 Patent should be corrected to "a second field." It is not.

Taken in the context of the claims, the Court is not persuaded that Plaintiff's proposed correction is the only reasonable correction. Claims 1, 6, and 7 of the '177 Patent recite as follows:

> **1.** A non-transitory computer-readable recording medium storing instructions to be executed by one or a plurality of computers capable of being used by a player conducting a battle game, the instructions causing the one or a plurality of computers to execute steps of:
>> displaying, on a ***first field***, a plurality of cards selected from a deck which is a stack of virtual cards;
>> during a first term of the battle game, conducting a battle to a first opponent character based on a parameter set on a card selected by a player's operation under a first battle condition, wherein the first battle condition is not changed during the first term;
>> at a conclusion of the first term of the battle game, automatically initiating a second term of the battle game, and during the second term of the battle game continued from the first term, conducting the battle to a second opponent character based on the parameter set on the card selected by the player's operation under a second battle condition, wherein the second battle condition is different from the first battle condition and is predetermined independent from a battle result of the first term, and the first opponent character and the second opponent character are same or different, and wherein the second battle condition is not changed during the second term; and
>> during a third term of the battle game continued from the second term, conducting the battle to a third opponent character based on the parameter set on the card selected by the player's operation under a third battle condition, wherein the third battle condition is different from the second battle condition and is dependent on a battle result of the second term, and the second opponent character and the third opponent character are same or different, and wherein the third battle condition is not changed during the third term.

> **6.** The non-transitory computer-readable recording medium according to claim 1, wherein the battle is conducted on ***a second field different from the first field***.

> **7.** The non-transitory computer-readable recording medium according to claim 1, wherein ***the first field and the second field*** are included in a game screen.

'177 Patent col.12 l.65 – col.13 l.32, col.13 ll.49–54 (emphasis added). It may be that the error is that "the second field" in Claim 7 should be "a second field." Or it may be that the error in Claim 7 is that it should depend from Claim 6, which recites "a second field different from the first field." Indeed, Claim 13 largely parallels Claim 7 and depends from Claim 8, which recites "a second field different from the first field." *Id.* at col. 13 ll.65–66, col.14 ll.32–34.

As the Court perceives at least two reasonable corrections to Claim 7 but no way to discern which is the proper correction, it cannot correct the error in Claim 7. *See Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1354 (Fed. Cir. 2003) (holding that a district court may not correct an error unless "the correction is not subject to reasonable debate").

Accordingly, the Court holds that Claim 7 is indefinite.

**G.** **"a third term after the second term, in the second field, under a second battle condition which is different from the first battle condition and second battle condition and is dependent on a battle result in the second term, conduct a battle against a third-term opponent character appearing in the third term using a third-term parameter based on a third-term card selected by the player"**

| Disputed Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "a third term after the second term, in the second field, under a second battle condition which is different from the first battle condition and second battle condition and is dependent on a battle result in the second term, conduct a battle against a third-term opponent character appearing in the third term using a third-term parameter based on a third-term card selected by the player"<br><br>• '362 Patent Claim 14 | a third term after the second term, in the second field, under a third battle condition which is different from the first battle condition and second battle condition and is dependent on a battle result in the second term, conduct a battle against a third term opponent character appearing in the third-term using a third-term parameter based on a third-term card selected by the player | Indefinite, or:<br><br>a third term after the second term, in the second field, under a second battle condition that is different than the first battle condition and second battle condition and varies depending on player actions performed during the second term . . . |

**The Parties' Positions**

Plaintiff submits: The reference to "under a second battle condition" in Claim 14 of the '362 Patent is a typographic error. The term should be "under a third battle condition." This error is plain from the claim language itself, since the second battle condition cannot be different from the

second battle condition. The correct language is also clear from Claim 3 of the '362 Patent, which has dependent claims that parallel the dependent claims of Claim 14. Dkt. No. 65 at 27–29.

Defendant responds: "[T]here is no error obvious on the face of the patent, and GREE's purported correction is open to reasonable debate." Thus, Defendant's proposed correction is improper. Further, "the specification does not provide any guidance or disclosure as to how a second battle condition [] is different than the first battle condition and second battle condition." Thus, the term is indefinite. If the Court construes this term, it should clarify that the battle results on which the second battle condition depends "are the result of the player's action in battle." Dkt. No. 67 at 27–30.

In addition to the claims themselves, Defendant cites the following **intrinsic evidence** to support its position: '362 Patent col.8 ll.18–23, col.9 ll.4–9, col.10 ll.8–11.

Plaintiff replies: "Because the claim as written requires an impossibility, that 'a second battle condition . . . is different from the first battle condition and second battle condition,' the error is obvious because a condition cannot be different from itself." Further, there is no reasonable alternative to correcting the first recitation of "second battle condition" to "third battle condition." Dkt. No. 68 at 11–12.

### <u>Analysis</u>

The issue in dispute is whether it is reasonably certain that "under a second battle condition" in Claim 14 of the '362 Patent should be corrected to "under a third battle condition." It is.

Given the context of the claims, the error in Claim 14 is clear and there is only one reasonable correction. Claim 14, and Claim 12 from which Claim 14 depends, recite as follows:

> **12.** A game apparatus configured to provide a battle game between a plurality of players, comprising a communication interface configured to communicate with a plurality of client devices, and a rendition processing module comprising a battle processing unit;

wherein the rendition processing module is configured to render a game screen comprising a first field at a lower position in the game screen and a second field above the first field, wherein in the first field, a plurality of cards selected from a deck which is a stack of virtual cards are arranged in a horizontal direction;

wherein the battle processing unit is configured to, during ***a first term*** of the battle game, in the second field, ***under a first battle condition***, conduct a battle against a first-term opponent character appearing in the first term using a first-term parameter based on a first-term card selected by a player in the plurality of players, and is configured to conclude the first term of the battle game at a predefined end timing based on a start timing of the battle game;

wherein the battle processing unit is configured to start ***a second term*** of the battle game at a predefined start timing based on the start timing of the battle game, and during the second term after the first term, in the second field, ***under a second battle condition which is different from the first battle condition***, conduct a battle against a second-term opponent character appearing in the second term using a second-term parameter based on a second-term card selected by the player, and conclude the second term of the battle game at a second pre- defined end timing based on the start timing of the battle game.

**14.** The game apparatus of claim 12**,** wherein the battle processing unit is configured to, during ***a third term*** after the second term, in the second field, ***under a <u>second</u> battle condition which is different from the first battle condition and <u>second</u> battle condition*** and is dependent on a battle result in the second term, conduct a battle against a third-term opponent character appearing in the third term using a third-term parameter based on a third-term card selected by the player.

'362 Patent col.14 ll.23–55, 59–67 (emphasis added). The Court agrees with Plaintiff that the recitation of "a second battle condition which is different from the first battle condition and second battle condition" in Claim 14 is nonsensical as it requires the second battle condition to somehow be different from itself. Claim 12 provides significant clues for correcting Claim 14. Specifically, Claim 12 requires "a second term . . . under a second battle condition which is different from the first battle condition." This language largely parallels the language at issue from Claim 14. It suggests that the "third term" of Claim 14 is meant to be under a "third battle condition" that is different from the first and second battle condition. This understanding parallels the largely similar

structure of Claims 3 and 27. Ultimately, there is a typographical error in Claim 14 and only one reasonable correction for that error.

Accordingly, the Court construes this term as follows:

- "a third term after the second term, in the second field, under a second battle condition which is different from the first battle condition and second battle condition and is dependent on a battle result in the second term, conduct a battle against a third-term opponent character appearing in the third term using a third-term parameter based on a third-term card selected by the player" means "a third term after the second term, in the second field, under a third battle condition which is different from the first battle condition and second battle condition and is dependent on a battle result in the second term, conduct a battle against a third term opponent character appearing in the third-term using a third-term parameter based on a third-term card selected by the player."

H.      " … rendition processing module … configured to …"

| Disputed Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|
| "a game apparatus configured to provide a battle game between a plurality of players, comprising a communication interface configured to communicate with a plurality of client devices, and a rendition processing module comprising a battle processing unit … wherein the rendition processing module is configured to render a game screen comprising a first field at a lower position in the game screen and a second field above the first field, wherein in the first field, a plurality of cards selected from a deck which is a stack of virtual cards are arranged in a horizontal direction"<br><br>• '362 Patent Claim 12 | plain and ordinary meaning, no construction necessary<br><br>alternatively,<br>• "rendition processing module" means "a module performing the processing to render a display"<br>• **structure**: rendition processing module disclosed at '362 Patent figs. 2, 5, col.4 l.59 – col.5 l.9, col.7 l.42 – col.9 l.16, col.10 l.41 – col.11 l.60 | 35 U.S.C. § 112(f), indefinite for lack of sufficient structural disclosure<br><br>alternatively,<br>• **function**: execute rendition processing for a battle between groups, quest processing that implements a quest, which is a search game, gacha processing for dispensing items that are part of a set, processing for combining cards, and secondary battle processing that executes processing to battle an enemy character other than in a main battle<br>• **structure**: the rendition processing module disclosed at '362 Patent fig.2, col.4 l.57 – col.5 l.5, including a quest processing unit, a gacha processing unit, an integrating unit, a secondary battle processing unit, and a battle processing unit. |

**The Parties' Positions**

Plaintiff submits: There is a presumption against applying 35 U.S.C. § 112(f) to this term as

the term does not includes the word "means." The claim itself provides the functional steps the

"rendition processing module" follows to render a display, indicating that it is not as § 112(f)

limitation. Even if governed by § 112(f), the '362 Patent provides sufficient structure to satisfy the

statute. Defendant's proposed alternative improperly includes functions and structure not required

by the claim language. Dkt. No. 65 at 29–31.

In addition to the claims themselves, Plaintiff cites the following **intrinsic evidence** to support its position: **Intrinsic evidence**: '177 Patent, fig.2, col.4 ll.62–66, col.5 ll.8–12.

Defendant responds: The "rendition processing module" of Claim 12 of the '362 Patent is defined by the function it performs—it is "configured to render a game screen …." Thus, the term is governed by 35 U.S.C. § 112(f). And "[t]he specification further details the functions required to be performed by the rendition processing module, including quest processing that implements a quest, which is a search game, gacha processing for dispensing items that are part of a set, processing for combining cards, and secondary battle processing that executes processing to battle an enemy character other than in a main battle." The '362 Patent does not adequately disclose structure for performing the function that the rendition processing module is configured to perform. Thus, the term renders the claim indefinite. "[T]to the extent the Court determines that the disclosure in FIG. 2 of the '362 Patent is sufficient to confer structure, the entirety of the disclosed structure must be included in the construction." Dkt. No. 67 at 30–35.

In addition to the claims themselves, Defendant cites the following **intrinsic evidence** to support its position: '362 Patent fig.2, col.4 l.49 – col.5 l.5.

Plaintiff replies: Defendant has not overcome the presumption against applying § 112(f) to the rendition processing module. Dkt. No. 68 at 12–13.

Plaintiff cites further **intrinsic evidence** to support its position: '177 Patent figs.5, 8, col.7 ll.33 – col.9 l.6, col.10 l.30 – col.11 l.50.

**<u>Analysis</u>**

There are two issues in dispute. First, whether this term is governed by 35 U.S.C. § 112(f). Second, whether the term, if governed by § 112(f), is supported by the requisite disclosure of structure in the '362 Patent. The term is not governed by § 112(f), making the second issue moot.

Defendant has not overcome the presumption against applying § 112, ¶ 6. The Court begins with the presumption that § 112, ¶ 6 does not apply because the term does not include the "means" language traditionally used to signal application of the statute. *Williamson*, 792 F.3d at 1347–49 & n.3 (en banc in relevant portion). This "presumption can be overcome and § 112, para. 6 will apply if the challenger demonstrates that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Id*. at 1349 (quotation marks omitted). "[T]he mere fact that the disputed limitations incorporate functional language does not automatically convert the words into means for performing such functions." *Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1008 (Fed. Cir. 2018) (citation omitted). "The question whether [a term] invokes section 112, paragraph 6, depends on whether persons skilled in the art would understand the claim language to refer to structure, assessed in light of the presumption that flows from the drafter's choice not to employ the word 'means.'" *Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*, 948 F.3d 1342, 1354 (Fed. Cir. 2020).

Claim 12 of the '362 Patent provides significant indicia of the structural nature of the rendition processing module. Specifically, the claim provides:

> **12.** A game apparatus configured to provide a battle game between a plurality of players, comprising a communication interface configured to communicate with a plurality of client devices, and a rendition processing module comprising a battle processing unit;
>
> wherein the rendition processing module is configured to render a game screen comprising a first field at a lower position in the game screen and a second field above the first field, wherein in the first field, a plurality of cards selected from a deck which is a stack of virtual cards are arranged in a horizontal direction;
>
> wherein the battle processing unit is configured to, during a first term of the battle game, in the second field, under a first battle condition, conduct a battle against a first-term opponent character appearing in the first term using a first-term parameter based on a first-term card selected by a player in the plurality of players, and is configured to conclude the first term of the battle game at a predefined end timing based on a start timing of the battle game;

> wherein the battle processing unit is configured to start a second term of the battle game at a predefined start timing based on the start timing of the battle game, and during the second term after the first term, in the second field, under a second battle condition which is different from the first battle condition, conduct a battle against a second-term opponent character appearing in the second term using a second-term parameter based on a second-term card selected by the player, and conclude the second term of the battle game at a second pre- defined end timing based on the start timing of the battle game.

'362 Patent col.14 ll.23–55. This claim sets forth how the rendition processing module operates with its battle processing unit to achieve rendition objectives. This context indicates the structural nature of the claimed rendition processing module and is sufficient to sustain the presumption against § 112, ¶ 6. *See Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311, 1319–21 (Fed. Cir. 2004) ("circuit [for performing a function]" found to be sufficiently definite structure because the claim recited the "objectives or operations" of the circuit); *Zeroclick, LLC*, 891 F.3d at 1008 ("program that can [perform function]" found to be sufficiently definite structure in part because the claims provided operational context for the program); *Prisua Eng'g Corp.*, 948 F.3d at 1347–48, 1353–54 ("digital processing unit . . . performing [functions]" found to be sufficiently definite structure in part because the claims provided operational context for the unit). Given this context, Defendant has failed to overcome the presumption against application of § 112(f).

Accordingly, the Court holds that this term is not subject to § 112(f) and determines that it has its plain and ordinary meaning without the need for further construction.

## V.      CONCLUSION

The Court adopts the constructions above for the disputed and agreed terms of the Asserted Patents. The Court further finds that Claim 7 of the '177 Patent is indefinite. Furthermore, the parties should ensure that all testimony that relates to the terms addressed in this Order is constrained by the Court's reasoning. However, in the presence of the jury the parties should not expressly or implicitly refer to each other's claim construction positions and should not expressly refer to any portion of this Order that is not an actual construction adopted by the Court. The references to the claim construction process should be limited to informing the jury of the constructions adopted by the Court.

**SIGNED this 6th day of November, 2020.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE